**UNITED STATES of America,
Appellant,**

v.

**C. E. MATHEWS, Inc., Appellee.**

**No. 17354.**

United States Court of Appeals
Fifth Circuit.

Feb. 19, 1959.

Meyer Rothwacks, Louise Foster, A. F. Prescott, Dept. of Justice, Washington, D. C., O. B. Cline, Jr., Asst. U. S. Atty., Miami, Fla., Lee A. Jackson, Atty., Dept. of Justice, Washington, D. C., Charles K. Rice, Asst. Atty. Gen., James L. Guilmartin, U. S. Atty., Miami, Fla., for appellant.

Harry Friedman, Washington, D. C., Bernard R. Fleisher, New York City, for appellee.

Before TUTTLE, JONES and BROWN, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

This simple case presents an even simpler question: does a Federal statute authorizing the Government's suit to recapture a tax refund which was untimely made mean what it says? The District Court, without so much as mentioning the statute or its bare citation, presumably thought not. In any case, by its opinion, recovery was to be determined by equitable, not statutory considerations. We disagree.

The facts, or at least all of them we consider decisive, were stipulated, and on them, both parties moved for summary judgment. The Court granted that of the defendant-Taxpayer and denied that of the plaintiff-Government.

The claim for refund grew out of a loss carry-back of losses for fiscal year 1950 to Taxpayer's fiscal year 1949 ending March 31, 1949. For fiscal 1949 Taxpayer filed an income tax return and paid substantial taxes, none of which are in dispute here. The claim for refund, which was the one and only claim on which refund was actually made, was dated June 26 and received on June 30, 1953.

The statute, however, requires that a claim for refund based on a loss carry-back be filed within 38 months and 15 days of the end of the tax year in which the loss occurred.[1] By stipulation, this time expired June 15, 1953. The claim for refund was therefore late. Had the initial claim been denied, the statute would have been an absolute bar to any suit by the Taxpayer on such claim. This much the District Court recognized. Here, however, the refund claim was paid on July 15, 1954. This meant that not only was the refund claim late, but the voluntary payment of it was "erroneous" under the statute.[2]

By the sheer terms of the statute, this then brought into play that part of the

1. Section 322(b) (6):

"(6) *Special period of limitation with respect to net operating loss carry-backs and unused excess profits credit carry-backs.*—If the claim for credit or refund relates to an overpayment attributable to a new operating loss carry-back or to an unused excess profits credit carry-back, in lieu of the three-year period or limitation prescribed in paragraph (1), the period shall be that period which ends with the expiration of the fifteenth day of the thirty-ninth month following the end of the taxable year of the net operating loss or the unused excess profits credit which results in such carry-back, or the period prescribed in paragraph (3) in respect of such taxable year, whichever expires later. In the case of such a claim, the amount of the credit or refund may exceed the portion of the tax paid within the period provided in paragraph (2) or (3), whichever is applicable, to the extent of the amount of the overpayment attributable to such carry-back." Int.Rev.Code of 1939, § 322(b) (6), added by 59 Stat. 517. 556 (1945), 26 U.S.C.A. § 322(b) (6).

The reference to the "period prescribed in paragraph (3) in respect of such taxable year, whichever expires later," relates to the time for filing of a claim for credit or refund where the Commissioner and taxpayer have executed a written waiver extending the time for assessment.

2. Section 3774. *Refunds After Periods of Limitation.*

"A refund of any portion of an internal revenue tax (or any interest, penalty, additional amount, or addition to such tax) shall be considered erroneous—

"(a) *Expiration of period for filing claim.* If made after the expiration of the period of limitation for filing claim therefor, unless within such period claim was filed; or

\*　　\*　　\*

"(c) *Cross Reference.* For procedure by the United States to recover erroneous refunds, see section 3746." Int.Rev. Code of 1939, § 3774, 53 Stat. 466, 26 U.S.C.A. § 3774(a, c).

Code which permits the Government to sue to recapture erroneous refunds.[3]

Since under Section 3774, note 2, supra, this refund was erroneous, upon what basis could the District Court decline to apply Section 3746, note 3, supra, which plainly states that refunds erroneously made "may be recovered by suit brought in the name of the United States * * * within two years * * * "?

Apparently the Court had either one or both of two factors in mind. Since the parties stipulated that on the *merits* the refund was proper, the District Court apparently equated the situation with a suit by a taxpayer to recover taxes illegally assessed and collected. We and others have frequently described these suits in terms of a claim for money had and received in which taxpayer must also show that it is inequitable for the Government to retain the money. Hartwell Mills v. Rose, 5 Cir., 1932, 61 F.2d 441, 443. To this the District Court also added the general approach that statutes of limitations are a defense, not a basis of recovery. He used the celebrated figure that ofttimes the statute of limitations is "a shield, but never a sword."

All of this led the Court to hold that the Government had no right to recover because the stipulated facts neither showed, nor raised substantial question, that Taxpayer was retaining what in good conscience and equity rightfully belonged to the Government. The Court summed it up this way:

"* * * The United States found the amount of refund to be due and voluntarily paid the amount due to the Taxpayer. It now admits that the amount of the refund is correct, and it now cannot in good conscience assert the statute of limitations as a basis upon which to bring an action for the recovery of the sum which it admits it owed the defendant. Of course, the Government has the right to recover money paid by the Government by mistake to one having no just right to keep the funds, but here the Government made no mistake in the amount refunded to the taxpayer and the taxpayer has, in my opinion, a just right to retain the refund paid to him. * * * The Government has suffered no loss because the Government admits it owed the taxpayer the money when it paid him the refund."

■ We do not think such considerations are here relevant. The statute is plain and direct in language of a most simple nature for ease in understanding. Moreover, if our functions permits us to inquire into its underlying reasonableness, we soon see that Section 3746 is an integral part of amendments to the Internal Revenue Code designed expressly to afford equal treatment to taxpayers and the Government alike with respect to taxes paid or refunds made when either was barred by the applicable limitation.[4]

3. Section 3746. *Suits for Recovery of Erroneous Refunds.*

"(a) *Refunds after limitation period.* Any portion of an internal revenue tax (or any interest, penalty, additional amount, or addition to such tax) refund of which is erroneously made, within the meaning of section 3774, may be recovered by suit brought in the name of the United States, but only if such suit is begun within two years after the making of such refund." Int.Rev.Code of 1939, § 3746, 53 Stat. 461, 26 U.S.C.A. § 3746(a).

4. Section 3770(a) (2) provides: "Any tax (or any interest, penalty, additional amount, or addition to such tax) assessed or paid after the expiration of the period of limitation properly applicable thereto shall be considered an overpayment and shall be credited or refunded to the taxpayer if claim therefor is filed within the period of limitation for filing such claim." Int.Rev. Code of 1939, § 3770(a) (2), 53 Stat. 464, 26 U.S.C.A. § 3770(a) (2).

And see also Section 3775. *Credits After Periods of Limitation.*

"(a) *Period against United States.* Any credit against a liability in respect of any taxable year shall be void if any payment in respect of such liability

■ Congress was made aware [5] that when dealing with periods prescribed in limitations, the problem had two facets, one as a defense, the other as a basis for recovery. Involved especially in the latter was the further question whether affirmative recovery required a showing that on the intrinsic merits the payment or refund should not have been made. The purpose of this interwoven legislation was to make plain that if a taxpayer paid, or was compelled to pay, a tax then time-barred, or if the Government made a refund then time-barred, such untimely payments were to be recovered by taxpayer or Government on the basis of time without regard to the intrinsic merits or equities. See Smyth v. United States, 10 Cir., 1937, 92 F.2d 900, 901.

In a field where there is unavoidably so little certainty, indeed so much uncertainty, as the inescapably broad generalities of the Internal Revenue Code are applied by taxing agencies or courts, we should be slow to import considerations of the very kind which the legislation was designed to overcome. By the statute it is plain and positive: if the refund is late, the Government gets it back; if the assessment is late, the taxpayer gets it back. If the Government's suit for recovery of an erroneous untimely refund is burdened down with the necessity of showing an intrinsic lack of merit, then a like interpretation would be compelled for the taxpayer's suit to recover back an untimely assessment. If that occurred, the amendments found in Sections 3746, 3770, 3774, 3775 would have turned out to have been useless. The efforts of Congress to remove the defects of Section 1106(a) of the 1926 Act, see note 5, supra, would have turned out to be futile.

We have none of the unique circumstances present in Bull v. United States, 1935, 295 U.S. 247, 55 S.Ct. 695, 79 L. Ed. 1421; Stone v. White, 1937, 301 U.S. 532, 57 S.Ct. 851, 81 L.Ed. 1265; R. H. Stearns Co. of Boston, Mass. v. United States, 1934, 291 U.S. 54, 54 S.Ct. 325, 78 L.Ed. 647, or Cuba Railroad Co. v. United States, 2 Cir., 1958, 254 F.2d 280. What we say would not affect such situations. Equally important nothing in them suggests a different result from that which we reach.

Finally, we think there is no substance at all to the suggestion that there was insufficient demonstration that the alternative period of limitation in Section 322(b) (3) would not have made the refund claim of June 30 timely. No one ever suggested it in the numerous pleadings, papers, motions and proceedings filed below. The Judge was entitled to assume that the facts, and all of the facts, the parties deemed relevant to a decision were those set forth in the stipulation. It was treated and argued on that basis. This and the further suggestion that there might be facts warranting an inference that some other action of the Taxpayer constituted a timely informal claim, United States v. Memphis Cotton Oil Co., 1933, 288 U.S. 62, 53 S.Ct. 278, 77 L.Ed. 619, are a pure afterthought. The stipulation described a specific claim, copies of which were attached as exhibits. By the precise language of lawyers, the stipulation further stated that *"said* claim for refund" was allowed. The parties, their counsel and the Court considered the case wholly

would be considered an overpayment under section 3770(a) (2).
"(b) *Period against taxpayer.* A credit of an overpayment in respect of any tax shall be void if a refund of such overpayment would be considered erroneous under section 3774." Int.Rev. Code of 1939, § 3775, 53 Stat. 466, 26 U.S.C.A. § 3775(a, b).

5. See H.R.Rep. No. 2, 70th Cong., 1st Sess. 33–34 (1927), 1939-1 Cum.Bull.

(Part 2) 384, 406–407; I Report of the Staff of the Joint Committee on Internal Revenue Taxation 70–73 (November 15, 1927).

The provisions of 1939 Code Sections 3774 and 3746, notes 2, 3, supra, which are applicable here, were derived from Sections 608 and 610 respectively of the Revenue Act of 1928, 45 Stat. 791. Sections 3770 and 3775 were derived from Sections 607 and 609, respectively, of the same Act.

**818**

on the basis of the claim of June 30, 1953. It is too late to make something more out of it.

Summary judgment for the Taxpayer was therefore erroneous. Summary judgment ought to have been granted for the Government. The cause must be reversed with directions to do that.

Reversed and remanded.